**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | CR 04-1100-PHX-DGC |
| Plaintiff, | ) | |
| vs. | ) | **ORDER** |
| William Kevin Domingo, | ) | |
| Defendant. | ) | |

Defendant William Domingo has filed a motion to suppress evidence seized from his home on January 13, 2003. Doc. #20. The Government has filed a response and Defendant has filed a reply. (Docs. ##23,27). The Court held an evidentiary hearing on February 17, 2006. For the reasons set forth below, the Court will grant Defendant's motion.

**I.  Facts.**[1]

On January 12, 2003, at approximately 10:27 p.m., a shooting occurred at Defendant's mobile home in Laveen, Arizona, on the Gila River Indian Reservation. Officers Marbell and Sichling arrived at the scene within minutes. They found a deceased male lying on the ground in front of the residence. Defendant was sitting in the living room of the house with gunshot wounds to his shoulder and abdomen.

---

[1] The facts that follow were established in the parties' memoranda, agreements between counsel at the beginning of the evidentiary hearing, and the testimony of witnesses at the hearing.

1  Officers Marbell and Sichling secured the scene, both outside and inside the residence.
2  They secured the inside by conducting a protective sweep of the house looking for people,
3  additional victims, accessible weapons, and any other threat to officer safety.

4  Detective Redman arrived at the scene a short time later. Officers Marbell and
5  Sichling told her that they had secured the scene. Detective Redman entered the residence,
6  spoke with Defendant and those that were attending to him, and walked through the house
7  to make sure it was clear.

8  Detective Romo Lewis arrived at the scene at approximately 11:49 p.m. By this time
9  Defendant had been transported by helicopter to a Phoenix-area hospital and a crime scene
10 perimeter had been established with police investigation tape. Officer Marquez was
11 maintaining a log of everyone entering and exiting the scene. Detective Redman briefed
12 Detective Lewis and told him the scene was secure. Detectives Redman and Lewis then
13 walked through the residence, which by this time was vacant.

14 Detective Lewis began an investigation. He interviewed two witnesses, including a
15 woman who had been inside the house during the shooting. He also began collecting
16 evidence in the front yard of the house. At approximately 4:00 a.m., some four hours after
17 he had arrived at the scene, Detective Lewis noticed bullet holes in the front wall of the
18 house. He testified at the evidentiary hearing that at this point he decided to conduct a
19 protective sweep of the interior of the house to make sure it was secure. Detective Lewis
20 entered the house and worked counterclockwise, opening doors and looking in all rooms.
21 Upon opening a door to a storage room, Detective Lewis saw a handgun on top of a plastic
22 box. He took possession of the handgun, continued his sweep of the house, and later placed
23 the handgun in his vehicle for safekeeping. Detective Lewis did not obtain a warrant before
24 conducting this sweep of the house or seizing the handgun.

25 Detective Lewis's testimony at the evidentiary hearing was not entirely consistent.
26 Initially, he testified that he did not recall entering the house with Detective Redman when
27 he first arrived at the scene, nor that she told him the scene was secure. On cross and redirect
28

1  examination, however, he testified that he did understand from Detective Redman that both
2  the front yard and interior of the house had been secured before his arrival.

3  Detective Lewis's testimony as to why he searched the house and seized the weapon
4  also was confusing. He first testified that he seized the weapon as part of his protective
5  sweep to secure the residence. When asked why he did not obtain a warrant prior to
6  searching the house, he said that it was not necessary because the shooting had occurred
7  outside the house and he was searching the victim's residence. He confirmed on cross-
8  examination that his report of the investigation provides yet another explanation – that the
9  weapon was seized during photographing and measuring of the crime scene.

10 **II.    Analysis.**

11  Absent exigent circumstances, a warrantless entry of a residence is prohibited by the
12 Fourth Amendment. *See Peyton v. New York*, 445 U.S. 573, 586-88 (1980); *United States*
13 *v. Shabu*, 920 F.2d 1423, 1425 (9th Cir. 1990). There is no murder scene exception to this
14 rule. *See Mincee v. Arizona*, 437 U.S. 385 (1978).

15  Exigent circumstances exist if officers reasonably believe that their safety or that of
16 the general public is threatened. As the Supreme Court has explained, "'[t]he need to protect
17 or preserve life or avoid serious injury is justification for what would be otherwise illegal.'"
18 *Mincee*, 437 U.S. at 392 (quoting *Wayne v. United States*, 318 F.2d 205, 212
19 (D.C. Cir. 1963)). "[E]xigent circumstances are present when a reasonable person [would]
20 believe that entry . . . was necessary to prevent physical harm to the officers or other persons,
21 the destruction of relevant evidence, the escape of the suspect, or some other consequence
22 improperly frustrating legitimate law enforcement efforts." *Bailey v. Newland*, 263 F.3d
23 1022, 1033 (9th Cir. 2001) (quotation marks and citations omitted); *see United States v.*
24 *Alaimalo*, 313 F.3d 1188, 1192-93 (9th Cir. 2002). A warrantless search based on exigent
25 circumstances must "be 'strictly circumscribed by the exigencies which justify its
26 initiation.'" *Mincee*, 437 U.S. at 392 (quoting *Terry v. Ohio*, 392 U.S. 1, 25-26 (1968)).

27
28

Detective Lewis's 4:00 a.m. search of Defendant's residence cannot be justified on the basis of exigent circumstances. The residence had been secured twice before Detective Lewis arrived, once by Officers Marbell and Sichling and a second time by Detective Redman. Detective Lewis was told upon his arrival that the scene was secure, both outside and inside the residence, and he then walked through the residence with Detective Redman and saw for himself that no one was present. Four hours passed, during which time the scene was secured by crime tape, access to the scene was limited to law enforcement personnel, and there was no indication of a threat from within the residence. Given these circumstances, Detective Lewis's identification of bullet holes in the front of the residence at 4:00 a.m. did not give rise to an exigency that required him to enter the house again and conduct a search without a warrant.

Counsel for the Government suggested at the beginning of the evidentiary hearing that Detective Lewis made a good faith mistake when he concluded that the residence needed to be searched for security reasons. The Supreme Court has held that evidence obtained by police may be admitted at trial if it was seized in objective good faith reliance on a facially valid warrant that was later found to be invalid. *United States v. Leon*, 468 U.S. 897, 920 (1984). The Government has provided the Court with no authority suggesting that this "good faith" exception applies to warrantless searches. Even if it does, however, the Court finds that Detective Lewis did not have an objective good faith basis for believing that a search of the house was required. As noted above, the crime scene had been secured twice before he arrived, it was surrounded by investigative tape and Officer Marquez was maintaining a log of all persons entering and exiting, Detective Redman told Detective Lewis that the scene was secure, and Detective Lewis walked through the house with Detective Redman and saw that no one was present. Even if Detective Lewis somehow forgot all of these events, he did not pause to ask others if the house was secure before he entered again and conducted a search. Given the ready availability of other officers who could confirm that the house was

secure, Detective Lewis had no objective good faith basis for believing that officer safety or other exigencies required him to enter the house without a warrant.

A warrantless search of a home is presumed to be unlawful unless the Government demonstrates both probable cause and exigent circumstances. *See Kirk v. Louisiana*, 536 U.S. 635, 638 (2002) (entry of home unlawful unless both probable cause and exigent circumstances exist); *Welsh v. Wisconsin*, 466 U.S. 740, 749 (1984) (entry of home presumed unlawful absent probable cause and exigent circumstances). The Government has not satisfied this burden. The Court will grant Defendant's motion and suppress all evidence obtained as a result of Detective Lewis's search of the home, including the gun found in the storage room.

**IT IS ORDERED** that Defendant's motion to suppress evidence (Doc. #20) is **granted**.

DATED this 23rd day of February, 2006.

_____
David G. Campbell
United States District Judge